## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALGREEN CO.,<br><br>       Petitioner,<br><br>   v.<br><br>PWNHEALTH, LLC d/b/a EVERLY<br>HEALTH SOLUTIONS,<br><br>      Respondent. | Civil Action No. 24-0356-RGA |
| PWNHEALTH, LLC d/b/a EVERLY<br>HEALTH SOLUTIONS,<br><br>      Petitioner,<br><br>   v.<br><br>WALGREEN CO.,<br><br>      Respondent. | Civil Action No. 24-0357-RGA |

## MEMORANDUM OPINION

Kevin R. Shannon, Callan R. Jackson, David Ellis Moore, Tyler E. Cragg, POTTER ANDERSON & CORROON, LLP, Wilmington, DE; Howard S. Hogan, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C; Anne Champion, Gabriel Herrmann, Rahim Moloo, Reed Brodsky, GIBSON, DUNN & CRUTCHER LLP, New York, NY; Charles Hyun, REED SMITH LLP, New York, NY; Kasey J. Curtis, REED SMITH LLP, Los Angeles, CA,

     Attorneys for Walgreen Co.

William M. Lafferty, Courtney Leigh Kurz, Kevin Michael Coen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Katherine M. Peaslee, SUSMAN GODFREY LLP, Seattle, WA; Krysta Kauble Pachman, SUSMAN GODFREY LLP, Los Angeles, CA; Shawn J. Rabin, Stephanie Spies, SUSMAN GODFREY, LLP, New York, NY,

     Attorneys for PWNHealth, LLC.

February 10, 2025

**ANDREWS, U.S. DISTRICT JUDGE:**

Walgreen ("Walgreens") and PWNHealth ("PWN") engaged in a contractually-mandated arbitration, after which the sole arbitrator issued an award in favor of PWN in the amount of $987,653,712. (D.I. 23-4 at 75 of 76, Ex. 34). [1]

Walgreens filed a petition and motion to vacate or modify arbitral award. (D.I. 2; D.I. 3). PWN filed a petition and motion to confirm the award. *PWNHealth, LLC v. Walgreen Co.*, No. 24-cv-00357 (D. Del Mar. 19, 2024), D.I. 2, 4. I issued an order consolidating the two cases on April 2, 2024. (D.I. 30). I have considered all of the parties' briefing. (D.I. 4, 33, 36, 51, 53, 63, 64; No. 24-00357, D.I. 5).

"[A]n applicant seeking . . . to vacate an arbitral award under Section 10 must identify a grant of jurisdiction, apart from [9 U.S.C. § 10] itself, conferring 'access to a federal forum.'" *Badgerow v. Walters*, 596 U.S. 1, 8 (2022) (citation omitted). I have jurisdiction over this case pursuant to 9 U.S.C. § 9 and 28 U.S.C. § 1332(a)(1). (D.I. 3 at 5).

For the reasons set forth below, Walgreens' petition and motion to vacate or modify is DENIED. PWN's petition and motion to confirm is GRANTED.

## I.    BACKGROUND

Walgreens is a large national pharmacy that operates thousands of retail locations throughout the United States. (D.I. 3 at 6). At the beginning of 2020, ordering a COVID-19 test required a physician's involvement. (*Id.*; D.I. 33 at 3). Accordingly, Walgreens contracted with PWN to "gain access to its physician network to order tests for customers who scheduled appointments" using Walgreens' website. (D.I. 3 at 6 ¶ 19). The parties entered into a Services Agreement ("the Agreement") governing this arrangement. (*Id.*; D.I. 19-1 at 2–52 of 1022, Ex.

---

[1] Unless otherwise noted, docket cites are to *Walgreen Co. v. PWNHealth, LLC*, No. 24-cv-00356 (D. Del Mar. 19, 2024).

1). The Agreement contained an agreement to arbitrate disputes. (D.I. 19-1 at 25–26 of 1022, § 23, Ex. 1).

When regulatory requirements changed, Walgreens could have its in-house pharmacists order COVID-19 tests. (D.I. 3 at 7 ¶ 21). The arbitrator found that, during the summer of 2021, Walgreens "began testing a diversion" of some tests to its pharmacists using the website jointly created by Walgreens and PWN. Walgreens did not notify PWN of this diversion. The diversion eventually expanded to include all COVID-19 tests covered by the Agreement. (D.I. 19-1 at 58 of 1022, Ex. 2). For part of this period of time, "Walgreens did not remove PWN's mark from its website and, in some instances, customers continued to receive emails indicating that PWN would be emailing them their test results." (D.I. 3 at 7 ¶ 21; D.I. 19-1 at 74–75 of 1022, Ex. 2).

PWN filed an arbitration demand in June 2022, asserting claims for breach of contract, fraud, and violations of the Lanham Act and the Delaware Deceptive Trade Practices Act ("DTPA"). (D.I. 3 at 8 ¶ 25; D.I. 19-1 at 104–07 of 1022, Ex. 3). After extensive litigation, including at least a score of discovery disputes and a seven-day hearing with twenty-two witnesses, the arbitrator found in favor of PWN on its breach of contract claim, breach of covenant of good faith and fair dealing claim, Lanham Act claims, and DTPA claim, and in favor of Walgreens on the fraud claim. (D.I. 19-1 at 59, 91 of 1022, Ex. 2). The arbitrator explained his decision in a thirty-eight-page single-spaced opinion. (*Id.* at 55–92 of 1022, Ex. 2). He awarded PWN $83,444,524 in compensatory damages for the contract claims, $802,659,438 in disgorgement damages for the Lanham Act claims, and prejudgment interest for both. (D.I. 23-4 at 75 of 76, Ex. 34). The arbitrator found in favor of PWN on the DTPA claim but awarded no damages. (D.I. 19-1 at 91 of 1022, Ex. 2).

## II.    LEGAL STANDARD

"[A] party moving to vacate an arbitration award pursuant to [Federal Arbitration Act] Section 10 . . . bears the burden of proof." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 314 (3d Cir. 2021). "It's a steep climb to vacate an arbitration award." *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022). "[T]he standard of review of an arbitrator's decision is extremely deferential." *Id.* (quoting *Indep. Lab'y Emps.' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 215 (3d Cir. 2021)) (alteration in original). Under the Federal Arbitration Act, an arbitration award may only be vacated under the "exceedingly narrow circumstances listed in 9 U.S.C. § 10(a)." *Id.* (cleaned up) (quoting *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013)); *see Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) ("[T]he text compels a reading of the §§ 10 and 11 categories as exclusive.").

These narrow circumstances under which an arbitration award may be vacated are:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Walgreens asks that the award be vacated under section 10(a)(2) or section 10(a)(4). (D.I. 3 at 17–19).

A district court "may" modify or correct an award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a); *see U.S. for Use & Benefit of JRW Serv.*

4

*Grp. v. New Age Dev. Grp. LLC*, 2023 WL 371394, at *3 (3d Cir. Jan. 24, 2023) (citing *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 220 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013)) (holding modification of award only possible in cases of "obvious mathematical errors" or "complet[e] irrational[ity]").

A reviewing court does not "act to correct factual or legal errors made by an arbitrator, and . . . will uphold an award even if the arbitrator engaged in improvident, even silly, factfinding so long as the arbitrator did not act completely irrationally." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 296 (3d Cir. 2010) (internal citations and quotation marks omitted).

## III.    DISCUSSION

### A.    The Arbitrator Did Not Display "Evident Partiality"

A district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators[.]"  9 U.S.C. § 10(a)(2).

Walgreens does not claim the arbitrator was corrupt, but it does claim that the arbitrator had "evident partiality" against Walgreens.  Why?  Because of the recent opioid overdose and death of the arbitrator's grandson and Walgreens' association with the opioid crisis.  (D.I. 4 at 18–20).  Walgreens argues that any reasonable person would consider the arbitrator partial.  (*Id.* at 7).  Specifically, Walgreens argues that these circumstances meet the "evident partiality standard" because the arbitrator had a "material relationship with a party" that he failed to disclose.  (*Id.* at 19 (citing *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 138 (2d Cir. 2007))).

Walgreens first raised this issue on February 13, 2024 (D.I. 5 at 5 ¶ 20), about one week after the arbitrator had issued his opinion making a "partial final award" of about $887,000,000 to PWN (D.I. 19-1 at 91–92 of 1022, Ex. 2).  Three days later, the American Arbitration

5

Association refused to disqualify the arbitrator on the grounds of bias, stating its decision was "conclusive." (D.I. 4 at 18; D.I. 41 at 24 of 296, Ex. 18); *see* AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-19 (2022).

"An arbitrator is evidently partial only if a reasonable person would have to conclude that [he] was partial to one side. The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Freeman*, 709 F.3d at 253 (internal citation omitted).

Walgreens provides one article in support of its theory. The article, published September 7, 2023, focuses on the arbitrator's daughter-in-law. She has engaged in efforts to combat the criminal importation of fentanyl into the United States after her son's tragic overdose death from a fake Percocet pill he bought on the internet from an individual identified only as "Juice." (D.I. 5-1 at 55–56, 61–62 of 64, Ex. 4). Walgreens is not mentioned in the article. The U.S. pharmaceutical industry is not mentioned. The arbitrator is not mentioned. Further, though the arbitrator ultimately found mostly in favor of PWN, he made several rulings during the course of the arbitration in favor of Walgreens. (*See* D.I. 33 at 20).

The Third Circuit's articulated standard requires that a reasonable person would have no choice but to conclude that there was bias. Walgreens' evidence and argument do not come close to meeting this standard. Therefore, I will not vacate the arbitration award under § 10(a)(2).

## B.     The Arbitrator Did Not Exceed His Authority

A district court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." § 10(a)(4). "[A]n arbitrator's authority is derived from an agreement to arbitrate." *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 169 (3d Cir. 2009). "[A]n arbitrator may not ignore the plain language of the contract."

*Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. &*

*Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 199 (3d Cir. 2019) (internal citation

omitted).  However, "[b]ecause the parties bargained for the arbitrator's construction of their

agreement, an arbitral decision even arguably construing or applying the contract must stand,

regardless of a court's view of its (de)merits."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564,

569 (2013) (internal quotation marks and citations omitted).

### 1. Contractual Limitation on Liability

Walgreens argues that the arbitrator exceeded his authority because "plain contractual

language" stated that there was a liability cap.  (D.I. 4 at 1).  The relevant portion of the

Agreement states:

> EXCEPT FOR INDEMNIFICATION OBLIGATIONS HEREUNDER, IN NO
> EVENT SHALL EITHER PARTY, ITS AFFILIATES OR REPRESENTATIVES
> BE LIABLE TO THE OTHER PARTY, ITS AFFILIATES OR
> REPRESENTATIVES FOR ANY SPECIAL, INDIRECT, INCIDENTAL,
> EXEMPLARY, ECONOMIC, PUNITIVE, OR CONSEQUENTIAL DAMAGES,
> INCLUDING WITHOUT LIMITATION, ANY LOSS OF PROFITS, COVER
> COSTS, LOSS OR CORRUPTION OF DATA, LOST SAVINGS,
> INTERRUPTION OF USE OR ANY AND ALL OTHER COMMERICAL
> DAMAGES OR LOSSES EVEN IF FORESEEABLE OR EVEN IF THE SUCH
> PARTY, ITS AFFILIATES OR REPRESENTATIVES HAVE BEEN ADVISED
> OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER IN AN ACTION OF
> CONTRACT, NEGLIGENCE, STRICT LIABILITY, TORT OR OTHERWISE.
>
> EXCEPT FOR INDEMNIFICATION OBLIGATIONS [HEREUNDER], THE
> TOTAL LIABILITY OF EACH PARTY, ITS AFFILIATES OR
> REPRESENTATIVES TO THE OTHER PARTY, ITS AFFILIATES OR
> REPRESENTATIVES FOR ALL LOSSES RELATED TO, RESULTING FROM
> OR IN CONNECTION WITH [WALGREENS'] SERVICES, PWN PLATFORM,
> PWN SERVICES OR THE PERFORMANCE THEREOF OR THIS
> AGREEMENT SHALL NOT EXCEED THE TOTAL FEES PAID AND
> PAYABLE BY [WALGREENS] TO PWN FOR THE 12-MONTH PERIOD
> PRIOR TO THE OCCURRENCE OF THE EVENT GIVING RISE TO THE
> LOSSES . . . .

(D.I. 19-1 at 20 of 1022, Ex. 1, § 13.1).

Walgreens argues, "The Arbitrator redrafted this limitation on liability—omitting portions
and including words that appear nowhere in the provision." (D.I. 4 at 6). Specifically,
Walgreens takes issue with the following statement by the arbitrator: "[T]he limitation clause
[§ 13.1] applies only to claims 'arising under' the [Agreement] and the Lanham Act claims are
equitable, not contractual, in nature." (D.I. 19-1 at 90 of 1022, Ex. 2; D.I. 4 at 6). Walgreens
notes that "arising under" does not appear in section 13.1 of the Agreement. (D.I. 4 at 6; *see* D.I.
19-1 at 20 of 1022, Ex. 1, § 13.1). Walgreens claims the Agreement instead limited liability to
"the amount Walgreens paid PWN over the prior 12 months," which Walgreens states
"undisputedly amounted to $79.1 million." (D.I. 4 at 1).

I cannot say why the arbitrator chose to place the words "arising under" in quotation
marks. (D.I. 19-1 at 90 of 1022, Ex. 2). But regardless, the arbitration clause gave the arbitrator
authority to decide two categories of claims: "any dispute arising out of or relating to this
Agreement or any claim arising under any federal, state or local statutes, laws, or regulations
arising out of or relating to this Agreement." (*Id.* at 26 of 1022, Ex. 1, § 23). Inherent in that
authority, the arbitrator also had the authority to interpret contractual language and determine the
damages that were available for different types of claims.

The arbitrator interpreted the first paragraph of section 13.1 and determined it did not
preclude direct contractual damages. (*Id.* at 81 of 1022, Ex. 2; *see id.* at 20 of 1022, Ex. 1,
§ 13.1). He also found that Lanham Act damages are compensatory, not consequential, and
therefore likewise not included in the list of barred damages. (*Id.* at 81 of 1022, Ex. 2). This was
a contractual interpretation.

The second paragraph of section 13.1 limits liability for "all losses related to, resulting
from or in connection with [Walgreens'] services, PWN platform, PWN services or the

8

performance thereof or this agreement[.]" (*Id.* at 20 of 1022, Ex. 1, § 13.1). The arbitrator determined that this second paragraph applied to contractual losses, and that "Lanham Act claims are equitable, not contractual, in nature." (*Id.* at 90 of 1022, Ex. 2). He found, therefore, that the Lanham Act damages were not subject to the liability cap. (*Id.*). This too was a contractual interpretation.

The arbitrator was tasked with interpreting the contract. Part of that task was interpreting the limitation of liability clause at section 13.1. Based on the language of the contract, he interpreted the second paragraph to exclude equitable Lanham Act disgorgement of profits. Equitable Lanham Act disgorgement is not so unambiguously covered by contractual language that speaks of "losses" related to the Agreement that the arbitrator's determination would amount to "ignor[ing] the plain language of the contract." *Monongahela Valley Hosp.*, 946 F.3d at 199.

I find that the arbitrator did not exceed his authority by interpreting paragraph 2 of section 13.1 to exclude equitable Lanham Act disgorgement from the liability cap.

### 2. Manifest Disregard of the Law

In *Hall Street*, the Supreme Court held that the bases for vacatur and modification provided in sections 10(a) and 11 are "exclusive." 552 U.S. at 581. Some courts have interpreted *Hall Street* to preclude "manifest disregard of the law" as an independent basis to reject an arbitrator's award. *See, e.g., Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, 660 F.3d 281, 284–85 (7th Cir. 2011).[2] The Third Circuit has so far declined to speak on the topic

---

[2] *Affymax* held that "manifest disregard" only survives to the extent recognized in *George Watts & Son. Affymax*, 660 F.3d at 285. *George Watts & Son* held that "manifest disregard" was limited to (1) orders requiring the parties to violate the law and (2) orders failing to adhere to legal principles specified by the contract, which were therefore covered by section 10(a)(4). *George Watts & Son, Inc. v. Tiffany and Co.*, 248 F.3d 577, 581 (7th Cir. 2001).

post–*Hall Street*.[3]  *See Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120–121 (3d Cir. 2016) (noting the circuit split but declining to weigh in); *Facta Health Inc. v. Pharmadent LLC*, 2024 WL 4345299, at *6 n.5 (3d Cir. Sept. 30, 2024) (continuing to decline).

Assuming "manifest disregard of the law" survives, the "standard requires more than legal error.  The arbitrators' decision 'must fly in the face of clearly established legal precedent,' such as where an arbitrator 'appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Whitehead*, 811 F.3d at 121 (internal citations omitted).  The standard is "extremely deferential."  *Id.* (citation omitted).

### (a) Disgorgement of Profits as Remedy Under the Lanham Act

Walgreens claims the arbitrator manifestly disregarded the law by disgorging Walgreens' gross revenues under the Lanham Act "without any evidence of causation."  (D.I. 4 at 7, 13 (citing *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (characterizing "manifest disregard" as a "judicial gloss" on section 10 and maintaining the standard as a "valid ground for vacating arbitration awards"))).  Walgreens argues that "only 'attributable' sales can be disgorged under the Lanham Act."  (*Id.* at 14 (citing *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 242 (3d Cir. 2003))).   Walgreens also argues that the Lanham Act only permits recovery of "profits," not "gross revenues."  (*Id.* at 16).  Walgreens notes that the arbitrator characterized Lanham Act disgorgement as "compensatory," and that disgorgement under the Lanham Act "must constitute compensation and not a penalty."  (D.I. 51 at 6 (citing D.I. 19-1 at 81, 83 of 1022, Ex. 2)).

---

[3] So too the Supreme Court.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010).  Those circuits that have said "manifest disregard" survives have done so on the basis that the arbitrator is then exceeding the arbitrator's powers, i.e., the statutory basis is section 10(a)(4).  *See Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 173 n.3 (3d Cir. Jan. 30, 2014).

Disgorgement of profits is available as a remedy under the Lanham Act in three circumstances: "if the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary to deter infringement." *Banjo Buddies Inc. v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005). Any one of these rationales alone is sufficient. *Id.* In deciding whether equity supported disgorgement, the arbitrator reviewed the relevant factors stated in *Banjo Buddies* and determined that disgorgement was an appropriate remedy. (D.I. 19-1 at 86 of 1022, Ex. 2); *see Banjo Buddies*, 399 F.3d at 175.

The Lanham Act states, "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of costs or deduction claimed." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." § 1117(a).

The burden is on a defendant to "demonstrate, if [it] can, that profits were not derived from the infringing use." *Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.*, 251 F.2d 924, 927 (3d Cir. 1958). "It is well established that profits may be presumed to be attributable to infringement unless the defendant proves otherwise." *Pengu Swim Sch., LLC v. Blue Legend, LLC*, 2023 WL 5598996, at *10 (S.D. Tex. Aug. 29, 2023). Equity and statutory purpose favor erring on the side of providing a windfall to a plaintiff rather than the alternative. *See Banjo Buddies*, 399 F.3d at 178 ("Allowing [defendant] to keep half of the estimated profits would not serve the Congressional purpose of making infringement unprofitable[.]"); *accord Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942) ("There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer.").

11

The arbitrator allowed the parties to brief this issue and spent eight single-spaced pages in the award discussing Lanham Act damages, including attribution, disgorgement, ascertainment of profits, and proof of costs. (D.I. 19-1 at 83–90 of 1022, Ex. 2). Despite PWN's assertion that Walgreens' expert report was "untimely presented," the arbitrator did not exclude it because "each side deserves to . . . have its evidence heard and fully considered." (*Id.* at 87 of 1022, Ex. 2). He also admitted a spreadsheet containing a "schedule of Walgreens' financial actuals" "[d]espite [his] severe misgivings about the tactics and circumstances surrounding the creation, production, and use" of the document. (*Id.* at 88, 89 of 1022, Ex. 2).

On the merits of the evidence, due to "serious problems with [the] methodology" of a study relied upon by the expert report and issues with the spreadsheet stemming from "failure to produce appropriate financial records" and "unexplained discrepancies," the arbitrator did not rely upon this evidence to calculate deductions. (*Id.* at 88, 90, Ex. 2). He found that Walgreens had not "sustained its burden to prove offsetting costs and other deductions or that the profits were not derived from the infringement[.]" (*Id.* at 90 of 1022, Ex. 2). Accordingly, lacking what he regarded as adequate proof of costs or other deductions from Walgreens, the arbitrator landed on a "profits" number that equaled the revenues number. (*Id.*). The arbitrator also decided that this award of "the full amount of Walgreens' profits" was equitable because "[t]his was . . . a calculated scheme by Walgreens to capture for its bottom line the costs it had contracted to pay to PWN to achieve a place in the world of Covid testing[.]" (*Id.*).

The role of the court is not to reevaluate the facts or even correct errors in law on the part of the arbitrator. *See Ario*, 618 F.3d at 296. The arbitrator appears to have made factual findings based on the record available to him and made legal decisions based on those findings in accordance with his view of the law. His determinations did not "fly in the face of clearly

established legal precedent." *Whitehead*, 811 F.3d at 121. I find that the arbitrator did not

exhibit manifest disregard for the law in his calculation of profits for Lanham Act damages.

### (b) Prejudgment Interest Availability Under the Lanham Act

Walgreens argues that the arbitrator further manifestly disregarded the law because

prejudgment interest is not available under the Lanham Act. (D.I. 4 at 17 (citing *Kars 4 Kids*

*Inc. v. America Can!*, 8 F.4th 209, 225 (3d Cir. 2021))). PWN counters that it presented the

arbitrator with several authorities disagreeing with *Kars 4 Kids*, which he reviewed. (D.I. 33 at

18; *see* D.I. 41-1 at 20–21 of 296, Ex. 17; D.I. 23-4 at 75 of 76, Ex. 34).

As PWN noted to the arbitrator, the Agreement requires that the arbitrator apply "the

domestic laws of the State of Delaware" to the "validity, construction, interpretation,

enforcement and performance" of the Agreement, but says nothing about following Third Circuit

precedent regarding the interpretation of federal law. (D.I. 41-1 at 21 of 296, Ex. 17; *see* D.I. 19-

1 at 26 of 1022, Ex. 1, § 23). Though section 1117(a) of the Lanham Act does not explicitly

provide for prejudgment interest, other courts have allowed it, particularly in exceptional cases.

*See, e.g.*, *Merck Eprova AG v. Gnosis S.p.A*, 760 F.3d 247, 263–64 (2d Cir. 2014) (quoting *Am.*

*Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)) ("[S]uch an

award is within the discretion of the trial court and is normally reserved for 'exceptional'

cases."). Findings of willfulness and bad faith support a determination that a case is

"exceptional." *Id.* at 264. Given the arbitrator's findings, he could have determined that this was

an exceptional case and, therefore, prejudgment interest was warranted. (*See* D.I. 19-1 at 90 of

1022, Ex. 2 ("Walgreens should not benefit from its unprincipled use of PWN's marks, while

diverting patients from PWN through its alteration of the website.")).

I find that the arbitrator did not manifestly disregard the law by awarding prejudgment

interest on Lanham Act disgorgement.

Because the arbitrator neither exceeded his authority nor exhibited manifest disregard for the law, Walgreens' motion to vacate the arbitration award under section 10(a) is **DENIED**.

### C.    Modification Under 9 U.S.C. § 11(a)

Walgreens claims that the disgorgement award is duplicative of PWN's contractual damages and fails to account for costs. Therefore, Walgreens argues that, if not vacated, the award should be modified. (D.I. 4 at 7, 17–18). PWN counters that "there is no duplication, because contract damages compensated PWN for its losses, while disgorgement prevents Walgreens from benefitting from its misconduct." (D.I. 33 at 18). PWN notes that Walgreens already raised this argument in its Motion for Reconsideration, which the arbitrator denied because Walgreens "did not argue, nor did its damages expert find, that compensatory damages for the breaches of contract and disgorgement damages for the Lanham Act were duplicative." (*Id.* (citing D.I. 23-4 at 68 of 76, Ex. 32)). Because the arbitrator determined that the duplication argument was "not one to 'correct any clerical, typographical, or computational errors in the award'" and rather was "actually a motion to reargue the merits," the arbitrator found he was "not authorized under the [American Arbitration Association's] Commercial Rules to reopen the record and entertain new arguments and new evidence." (D.I. 23-4 at 68 of 76, Ex. 32 (quoting AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-52(a) (2022))). Thus, Walgreens had missed its chance to state its duplication argument.

I agree with the arbitrator. Walgreens' request for modification similarly does not relate to the sort of "evident material miscalculation of figures" required by § 11(a). The award is also not "completely irrational." *Sutter*, 675 F.3d at 220 (discussing grounds for vacatur). Walgreens motion to modify the award under section 11(a) is **DENIED**.

14

**D.    PWN's Attorneys' Fees and Costs**

PWN argues that Walgreens' arguments are frivolous and warrant an award for attorneys' fees and costs.  (D.I. 32 at 9 (citing *QAD, Inc. v. Block & Co.*, 2022 WL 1211302, at *4–5 (D. Del. Apr. 25, 2022))).

"In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification or if the party resisting arbitration did not have a reasonable chance to prevail." *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (internal citations and quotation marks omitted).  The award of attorneys' fees and costs is committed to the discretion of this court. *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 43 n.2 (3d Cir. 1985); *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n Pasnap*, 453 F. App'x 258, 260 (3d Cir. 2011).

Though I have extremely limited authority to vacate arbitration awards, I do not find that Walgreens acted without justification or a reasonable chance to prevail.  PWN's request for attorneys' fees is **DENIED**.

**E.    PWN's Motion to Confirm**

**1.    Confirmation**

A reviewing court "must" grant an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11[.]"  9 U.S.C. § 9. Accordingly, I **GRANT** PWN's motion to confirm the arbitration award.

**2.    Prejudgment and Postjudgment Interest**

As discussed above in subsection B(2)(b), the arbitrator's grant of prejudgment interest on the Lanham Act award was neither irrational nor in manifest disregard of the law.  After receiving and evaluating additional submissions from the parties regarding interest, the arbitrator

awarded compounded prejudgment interest on the "compensatory" contract damages and simple interest on the Lanham Act disgorgement. (D.I. 23-4 at 72 of 76, Ex. 33). As this action to confirm arbitration falls under this Court's diversity jurisdiction,[4] state law governs the interest rate between a final award and entry of judgment. *See Rhino Servs., LLC v. DeAngelo Contracting Servs., LLC*, 2023 WL 5186254, at *6 (E.D. Pa. Aug. 11, 2023). Under Delaware law, the default rate for prejudgment interest used by courts is "5% over the Federal Reserve discount rate. . . ." Del. Code Ann. tit. 6, § 2301(a) (2024); *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *30, *30 n.329 (Del. Ch. Jan. 29, 2010). Neither Walgreens nor its expert appears to have challenged PWN's expert's calculations using "5% over the Federal Reserve discount rate." (*See* D.I. 19-1 at 91 of 1022, Ex. 2).

Based on the calculations of the parties' experts, the arbitrator determined prejudgment interest on the contract damages was $10,063,921 and interest on the disgorgement damages was $91,485,829 through March 7, 2024. (D.I. 23-4 at 75 of 76, Ex. 34). I **CONFIRM** the arbitrator's calculations of prejudgment interest through March 7, 2024, and **GRANT** PWN post-award prejudgment interest at the same rates through the date of this judgment.

Walgreens does not dispute that postjudgment interest should be awarded. (*See* D.I. 36 at 20). Even in diversity cases, 28 U.S.C. § 1961 governs the rate of postjudgment interest. *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988); *Rhino Servs.*, 2023 WL 5186254, at *7 (awarding postjudgment interest in a confirmation of arbitration award).

Section 1961(a) states,

---

[4] This action could also fall under this court's federal question jurisdiction due to the Lanham Act claims at issue. That would commit the rate of prejudgment interest to this court's discretion. *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986). However, as neither party has asked for a different rate, I do not need to decide this question and will use the state law rate as the arbitrator did.

> "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."

28 U.S.C. § 1961(a).

I **GRANT** PWN's request for postjudgment interest at the applicable legal rate specified in 28 U.S.C. § 1961. The parties shall confer and submit an updated calculation of prejudgment interest due within one week.

## IV.    CONCLUSION

Walgreens' motion to vacate or modify is **DENIED**. PWN's motion to confirm is **GRANTED**. Walgreens shall pay post-award, prejudgment interest at the legal rate set forth in Del. Code Ann. tit. 6, § 2301(a). Walgreens shall pay postjudgment interest at the legal rate set forth in 28 U.S.C. § 1961(a) on all unpaid amounts.

An appropriate order will issue.